IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAXX US ACQUISITION, INC., <br><br> Plaintiff, <br><br> v. <br><br> RHONE APPAREL, INC., <br><br> Defendants, | Case No. <br><br> COMPLAINT FOR PATENT INFRINGEMENT <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

This is an action for patent infringement in which Plaintiff Saxx US Acquisition, Inc. ("Saxx") alleges that Defendant Rhone Apparel, Inc. ("Rhone") infringes U.S. Patent No. 7,958,571 B2 (the "'571 Patent"). In support of this action, Saxx alleges as follows:

### BRIEF SUMMARY OF ALLEGATIONS

1. For over 15 years, Saxx has sought to reinvent men's underwear.

2. As part of that mission, Saxx has designed and sold at least one revolutionary product that redefines men's underwear and the features they offer.

3. Saxx's product has been highly successfully, earning praise and endorsements from international publications and high-profile athletes, as well as imitators.

4. Saxx's success is due, in part, to its commitment to innovation and rethinking conventional underwear design.

5. To protect its innovation, Saxx has sought and been awarded the '571 Patent on novel men's underwear that both supports the male genitals and provides an effective means of avoiding chaffing of the genitals against the thighs.

6. In January 2022, Saxx sent Rhone a letter detailing how Rhone's "Essentials Boxer Brief" infringed the '571 Patent and Canadian Patent No. 2,615,227, a patent that claims priority to the '571 Patent.

7. Saxx's detailed letter included side-by-side images of Rhone's products and figures from Saxx's patents to illustrate Rhone's infringement.

8. Despite the showing of infringement, Rhone continued to market and sell its infringing product.

9. Left with no choice, Saxx sued Rhone for patent infringement, doing so in Canada, where Saxx is based.

10. Soon after the litigation started, the parties began discussing settlement. The Canadian litigation was settled but Rhone's infringement in the U.S. has continued.

11. Even though it has knowingly infringed the '571 Patent since it first became aware of the '571 Patent by at least January 2022 when formal notice of the patent and infringement was given by Saxx, Rhone has continued to sell products in the United States that infringe the '571 Patent.

## PARTIES

12. Saxx is a British Columbia Company with its principal place of business at 68 West 5th Avenue, Vancouver, British Columbia, Canada.

13. On information and belief, Rhone is a Delaware corporation with a principal place of business located at 484 Pacific St., Floor 1, Stamford, Connecticut 06902.

## JURISDICTION AND VENUE

14. Saxx brings this action for patent infringement under the Patent Act, 35 U.S.C. § 1, et seq., including but not limited to 35 U.S.C. § 271.

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

16. This Court has personal jurisdiction over Rhone because, *inter alia*, Rhone conducts continuous and systematic business in this District. For example, Rhone maintains retail locations at 133 5th Avenue, New York, New York, 10003 and 500 W 33rd Street Suite 222B, New York, New York 10001[1], has multiple sales outlets in this District through third-party sellers, and directly and/or through agents has regularly advertised, promoted, offered for sale, sold, and/or distributed, and continues to advertise, promote, offer for sale, sell, and/or distribute infringing products to customers and potential customers in this District, including, *inter alia*, directly through its website, www.rhone.com.

17. Venue is proper in this District under 28 U.S.C. § 1400 because Rhone maintains regular and established retail locations at 133 5th Avenue, New York, New York, 10003 and 500 W 33rd Street Suite 222B, New York, New York 10001 and has committed, and continues to commit, acts of infringement in this District, including but not limited to making, using, offering to sell, selling, and/or importing products that infringe Saxx's patent at issue in this lawsuit.

## FACTUAL ALLEGATIONS UNDERLYING CLAIM

**I.  Saxx Revolutionizes Men's Underwear**

18. Saxx was launched in 2007 to disrupt the market for men's underwear by offering consumers a new concept in genital comfort.

19. Just days into a lengthy fishing trip in the Pacific Ocean in 2006, former baseball player (catcher, NCAA Oklahoma State and UNLV, drafted by the Colorado Rockies) Trent Kitsch

---

[1] https://www.rhone.com/pages/find-retail-location/#

recognized an opportunity while experiencing discomfort wearing traditional underwear under his ocean fishing suit.

20. He considered that while there are multiple varieties of men's underwear products (boxers, briefs, boxer-briefs, etc.), for as long as Mr. Kitsch could remember, each had maintained a relatively constant design.

21. These designs resulted in problems for the user: chief among them was the lack of material between the genitals and the legs.

22. As a result, users in a variety of common situations–performing athletic feats (like fishing and baseball), wearing tight, fashionable pants, or even sitting down in certain positions–could experience severe discomfort in or near their genitals including sticking, pressure, chafing and excessive moisture.

23. There had generally not been much innovation in the technical design of underwear, and Mr. Kitsch wondered how he could reinvent men's underwear to prevent contact and be more comfortable.

24. Before his boat returned to port, Mr. Kitsch was already sketching out in his head designs that would address these problems.

25. Soon after he returned to Richard Ivey School of Business School in Ontario, Canada, where Mr. Kitsch was studying to obtain his MBA, he and his co-inventor Craig Galinowski refined the concept and hired professional fashion designer Cara Megan to produce a first prototype and patterns, as well as ensure that the design utilized the most appropriate materials and was visually appealing to consumers.

26. Many prototypes later, Mr. Kitsch and his collaborators had settled on a design for the first model of Saxx men's underwear.

27. The key innovation of the first Saxx underwear product was what would sometimes be known as "Comfort Side Panels:" two thin mesh internal panels extending toward a user's body from a genital pouch, which positioned a comfortable, wicking fabric between the genitals and the user's inner thighs.

 

https://www.saxxunderwear.com/pages/saxx-underwear-features (last visited March 7, 2023).

28. This design achieved Mr. Kitsch's vision of reducing discomfort and chafing all the while maintaining a visually-appealing aesthetic.

29. In the same year it was launched, Saxx released its first underwear design to the public.

30. The first 200 pairs of Saxx underwear were sold over the Christmas holiday in the cafeteria at Mr. Kitsch's business school and on the sidewalk outside a Lululemon store in Toronto, Ontario.

31. Flash-forward just two years, and Saxx had sold over 50,000 pairs of underwear utilizing the Comfort Side Panels.

32. Saxx has since grown from Mr. Kitsch and his early collaborators to over 100 employees and about 15% of the North American market share for men's underwear in the over $20 category.

33. Saxx and its underwear products have been featured in numerous international publications, including Men's Health ("The Best Underwear for Men"), Men's Fitness ("The Best Boxers and Briefs of 2017"), Esquire ("The 10 Best Boxer Briefs to Wear Every Day"), and National Geographic ("The Ultimate Men's Travel Underwear").

34. Saxx has had enthusiastic customers and brand ambassadors, such as: celebrities Jack Black, Neil Patrick Harris, Dave Bautista, and Dude with Sign; NFL players Stefon and Trevon Diggs; current and former professional baseball players Justin Morneau, Jeff Francis, Jake Arietta, and Ian Desmond; current and former professional basketball players Kevin Love and Carlos Boozer; MMA fighter Israel Adesanya and professional surfer Mark Healy.

35. Building on its core tenets of comfort and style, Saxx now offers various apparel products including athletic shorts, t-shirts, and sleepwear. These products are available throughout the United States in major retailers (Nordstrom, REI) and regional brick-and-mortar stores. They are also available online through Amazon, Zappos, and other large online retailers.

36. While Saxx has expanded its product line, it remains ever-conscious of its founding mission: to offer the most comfortable men's underwear by re-thinking decades of convention and by adopting innovative technologies designed to achieve comfort and versatility.

II.  **Saxx Invests In and Is Awarded the '571 Patent**

37. On December 19, 2007, Mr. Kitsch and Mr. Galinowski filed U.S. Patent Application No. 12/000,966, entitled "Underwear Garment for a Male."

38.     U.S. Patent Application No. 12/000,966 eventually issued as U.S. Patent No. 7,958,571 on June 14, 2011.

39.     Saxx is the owner of all rights, title, and interest in and to the '571 Patent, with the full and exclusive right to bring suit to enforce the '571 Patent, including the right to recover for past infringement.

40.     The '571 Patent is valid and enforceable under United States Patent Laws.

41.     The '571 Patent relates to a male underwear garment that includes "a genital pouch and a pair of side panels collectively formed in a mid-section of a front wall depending from a waistband so as to bisect said front wall."

42.     Figures 3 and 8 of the '571 Patent (below) illustrate a pair of briefs according to an embodiment of the invention.





FIG 8

### III.  Rhone's Infringing Boxers

43. As noted above, Rhone has known that its products infringe the '571 Patent since at least January 2022.

44. Nonetheless, despite Saxx's repeated requests and even an enforcement action in Canada, Rhone has continued to infringe the '571 Patent.

45. In particular, Rhone has purposefully advertised, promoted, offered for sale, sold, and distributed its "Essentials Boxer Brief" and "Essentials Boxer Trunk" (collectively, "Essentials Boxer") and "Essentials Active Boxer Trunk" and "Essentials Active Boxer Brief" (collectively, "Essentials Active Boxer").  Each of these products infringes at least claim 1 of the '571 Patent.

46. As illustrated in the annotated image below, Rhone markets the "comfort pouch" of its "Essentials Boxer" on its website, www.rhone.com.

47. Rhone also advertises the "signature pouch details" of its "Essentials Boxer" on its website, www.rhone.com.



*See* https://www.rhone.com/products/mens-boxer-briefs/?variant=43060337967296 (last visited April 14, 2023); *see also* https://www.rhone.com/products/mens-boxer-briefs/?variant=43060337967296 (last visited April 14, 2023).

48. As illustrated in the annotated image below, Rhone markets the "comfort pouch" of its "Essentials Active Boxer" on its website, www.rhone.com.



*See* https://www.rhone.com/products/mens-active-boxer-briefs/?variant=43060336853184 (last visited April 14, 2023); *see also* https://www.rhone.com/products/essentials-active-boxer-trunk/?variant=43154629099712 (last visited April 14, 2023).

49. On information and belief, Rhone sells its "Essentials Boxer" and "Essentials Active Boxer" through various retailers, which are listed on its website at https://www.rhone.com/pages/find-retail-location/.

50. Rhone has conducted its infringing activities without a license or any other authorization.

51. As discussed in more detail below, the "Essentials Boxer" and "Essentials Active Boxer" utilize the inventions of the '571 Patent.

10

## **COUNT 1: INFRINGEMENT OF U.S. PATENT NO. 7,958,571**

52. Saxx realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

53. Rhone makes, uses, sells, offers for sale, and/or imports in or into the United States various men's underwear products. Such products include, on information and belief, the "Essentials Boxer" and "Essentials Active Boxer."

54. On information and belief, Rhone has directly infringed and continues to directly infringe at least claim 1 of the '571 Patent by, among other things, making, using, selling, offering for sale, and/or importing at least the "Essentials Boxer" and "Essentials Active Boxer" in or into the United States.

55. On information and belief and as shown in at least the product images above, the "Essentials Boxer" and "Essentials Active Boxer" are underwear garments for wearing by a user having a penis, a scrotum, and a perineum.

56. On information and belief and as shown in at least the product images above, the "Essentials Boxer" and "Essentials Active Boxer" include a waistband, and a front wall depending downwardly from the front thereof.

57. On information and belief and as shown in at least the product images above, the "Essentials Boxer" and "Essentials Active Boxer" include a genital pouch formed in a mid-section of the front wall so as to bisect the front wall, the pouch pear-shaped when viewed from the front and having a lower extremity thereof which extends under and rearwardly of the front wall so as to form a perineum portion for covering past the scrotum and to the perineum of the user when worn by the user.

58. On information and belief and as shown in at least the product images above, the "Essentials Boxer" and "Essentials Active Boxer" include a pouch having a phallus supporting portion extending forwardly of a plane generally containing the front wall and forming therein an apex portion for containing a head of the penis of the user when the penis is hanging at rest.

59. On information and belief and as shown in at least the product images above, the "Essentials Boxer" and "Essentials Active Boxer" include a pouch having a scrotum supporting portion extending from and between the phallus supporting portion and the perineum portion for containing at least a portion of the scrotum of the user.

60. On information and belief and as shown in at least the product images above, the "Essentials Boxer" and "Essentials Active Boxer" further include a pair of laterally spaced apart, separate and substantially parallel side panels forming upwardly from adjacent the perineum generally vertical extending scrotum fences towards the waistband spaced so as to snugly engage sides of the scrotum and to substantially completely cover over and support the sides of the scrotum and to extend upwardly into a fold along a lowermost aspect of the abdomen of the user formed between the scrotum and the inner thighs of the user so as to substantially entirely cover exposed thigh skin in the fold exposed for rubbing against scrotum skin in the fold.

61. By making, using, testing, offering for sale, selling, and/or importing the "Essentials Boxer" and "Essentials Active Boxer," Rhone has injured Saxx and is liable for directly infringing one or more claims of the '571 Patent, including at least claim 1, pursuant to 35 U.S.C. § 271(a).

62. On information and belief, Rhone indirectly infringes the '571 Patent by actively inducing infringement under 35 U.S.C. § 271(b).

63. On information and belief, Rhone intended to induce patent infringement by importers, third-party retailers, and users of the "Essentials Boxer" and "Essentials Active Boxer" and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement. Rhone specifically intended and was aware that making, using, selling, offering for sale, and/or importing the "Essentials Boxer" and "Essentials Active Boxer" would infringe the '571 Patent. Rhone performed the acts that constitute induced infringement with knowledge of the '571 Patent and with knowledge that the induced acts would constitute infringement. For example, on information and belief, Rhone contracts with third-party importers for import of the "Essentials Boxer" and "Essentials Active Boxer" into the United States. By contracting in a manner that would cause third-party importers to directly infringe one or more claims of the '571 Patent, including at least claim 1, Rhone specifically intended to induce infringement of the '571 Patent. As a further example, on information and belief, Rhone contracts with third-party retailers for sale and for offer for sale of the "Essentials Boxer" and "Essentials Active Boxer" by the third-party retailers. By contracting in a manner that would cause third-party retailers to directly infringe one or more claims of the '571 Patent, including at least claim 1, Rhone specifically intended to induce infringement of the '571 Patent. By selling and/or offering for sale the "Essentials Boxer" and "Essentials Active Boxer" in a manner that would cause direct infringement one or more claims of the '571 Patent, including at least claim 1, Rhone specifically intended to induce infringement of the '571 Patent. Accordingly, Rhone has induced and continues to induce third-party importers, retailers, and users to import, sell, offer for sale, and use the "Essentials Boxer" and "Essentials Active Boxer" in a manner that directly infringes the '571 Patent, knowing that such import, sale, offer for sale, and use constitute direct infringement of the '571 Patent.

64. On information and belief, Rhone has had knowledge of the '571 Patent since at least January 10, 2022, when it received a letter from Saxx informing Rhone of Rhone's infringement.

65. On information and belief, at a minimum Rhone knew of its infringement by February 8, 2022 when it was served with the statement of claim in the Canadian litigation.

66. Rhone is utilizing the technology claimed in the '571 Patent without paying a reasonable royalty.

67. Given the parties' prior communications and litigation history, Rhone is infringing the '571 Patent in a manner best described as willful, egregious, deliberate, in bad faith, and/or flagrant.

68. As a result of infringement of the '571 Patent by Rhone, Saxx has suffered monetary damages, and seeks recovery in an amount adequate to compensate for that infringement, but in no event less than a reasonable royalty for the use made of the invention by Rhone with interest and costs as fixed by the Court.

69. On information and belief, infringement of the '571 Patent by Rhone has been, and continues to be willful and deliberate, and has caused substantial damage to Saxx.

**PRAYER FOR RELIEF**

Saxx requests the Court enter judgment against Rhone as follows:

(A)   That Rhone has infringed the patent-in-suit in violation of 35 U.S.C. § 271;

(B)   Awarding Saxx its damages suffered as a result of Rhone's infringement, including but not limited to a reasonable royalty, Rhone's profits, Saxx's actual damages (including at least lost profits), enhanced damages, exemplary damages, costs, prejudgment and post judgment interest, and reasonable attorney fees;

(C)   Finding this case to be exceptional within the meaning of 35 U.S.C. § 285;

(D)  Awarding Saxx its costs, attorneys' fees, expenses, and interest;

(E)  Trebling Saxx's damages from Rhone due to willfulness;

(F)  Enjoining further wrongful acts by Rhone that would further irreparably injure Saxx and its intellectual property; and

(G)  Granting Saxx other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Saxx hereby demands trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38.

Dated: April 21, 2023                    Respectfully submitted,

PERKINS COIE LLP

By: */s/ Gene W. Lee*
Gene W. Lee
1155 Avenue of the Americas, 22nd Fl.
New York, NY 10036-2711
Tel: 212.261.6900
Fax: 212.977.1649
GLee@perkinscoie.com

*Attorney for Plaintiff Saxx US Acquisition, Inc.*